IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **MOBILE MOTHERBOARD, INC.** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **Case No. 6:23-cv-00325-KC** |
| | § | |
| | § | Patent Case |
| **ASUSTEK COMPUTER INC.** | § | |
| | § | Jury Trial Demanded |
| | § | |
| *Defendants*. | § | |

## DEFENDANT ASUSTEK COMPUTER INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER FED. R. CIV. P. 12

Defendant Asustek Computer Inc. ("ASUS") respectfully brings this motion under Fed. R. Civ. P. 12(b)(6). Plaintiff Mobile Motherboard, Inc.'s ("Mobile Motherboard" or "Plaintiff") Complaint (Dkt. 1) should be dismissed because it fails to state a claim upon which relief can be granted. This case is a case of alleged patent infringement. The asserted patent in this case is a reissued patent that was filed more than two years after the original patent had issued. As such, under 35 U.S.C. §251, the patentee was not allowed to broaden the scope of the claims. The patentee impermissibly broadened the scope of the claims and so the reissued patent is invalid and unenforceable. Thus, the Court should grant this motion and end this case.

**I.    Background and Statement of Relevant Facts**

Mobile Motherboard filed this lawsuit against ASUS on May 5, 2023. Dkt. 1. This is a case of alleged patent infringement, and Mobile Motherboard has alleged that ASUS infringes the United States Reissued Patent No. RE48,365 ("the Reissued Patent"). Dkt. 1-1. The Reissued Patent was filed on December 5, 2018. Dkt. 1-1 at page 2 of 19. The original patent of which the Reissued Patent is a reissue (US 7,990,724) which issued on August 2, 2011. In sum, the application for the Reissue Patent was filed more than seven years after the original patent issued.



Mobile Motherboard has alleged that ASUS infringes at least claim 1 of the Reissued Patent. Dkt. 1 at ¶¶13, 14, 26, 27, 28 and 29. No other claim is specifically mentioned in the Complaint. The Reissued Patent's claim 1 is reproduced below. The bold text identifies the changes that were made to the original claim 1. The italicized text was added to the original claim 1 and the bracketed text ([]) was deleted from the original claim 1.

> 1. A computer system comprising: a computer box **without a processor for performing computing operations**, said computer box comprising: a housing; circuitry enclosed by said housing; a bus internal to said housing connected to said circuitry; and a first communication port for enabling electrical connection of circuitry external to said housing to said internal bus; and a portable *and handholdable* motherboard external to the housing comprising: a central processor, a *motherboard* bus connected to said *central* processor, a *motherboard* connector for engagement with said first communication port for enabling electrical connection of said *central* processor through said **[processor]** *motherboard* bus to said internal bus of said computer box; one or more second communication ports for enabling electrical connection of circuitry external to said motherboard to said motherboard bus; wherein connection of said **[portable]** motherboard connector to said first communication port enables said computer box to perform computing operations; *and wherein said motherboard includes Northbridge and Southbridge circuitry*.

At least three changes made to claim 1 has made it broader than the original: (1) addition of the limitation "without a processor for computing operations"; (2) changing of the limitation "processor bus" to "motherboard bus"; and (3) the addition of the limitation "handholdable".

The first change to claim 1, which made the computer box to be <u>without</u> a processor that performs computing operations, necessarily broadens claim 1. This point is readily understood when claim 1 is read in view of its dependent claims 8, 9 and 10. In those claims, the computer box is disclosed to be either a personal computer, a laptop, a server, or a mobile phone. However, all such products that are sold in America come <u>with</u> a processor that performs computing operations. The processor is typically a chip, and it is made by companies like Intel, AMD, Nvidia and ARM. The reissued claim 1 tries to cover a personal computer, a laptop, a server, and a mobile phone that comes <u>without</u> its own processor. But no cell phone, whether made by Apple or Samsung or someone else, comes with a missing processor. A mobile phone <u>without</u> a processor of its own would be an atypical mobile phone. While the patent allows a patentee to write a claim to cover anomalous devices, the problem here is that the reissued claim 1 is necessarily broader than the original claim 1 and the broadening was untimely under 35 U.S.C. §251.

The second change, in which the processor bus is replaced with the motherboard bus, also broadens claim 1. A processor bus can mean either a bus inside a processor or a bus that connects the processor to something else, for example, memory. A processor is typically placed on the motherboard, meaning that a motherboard is larger than a processor. A motherboard bus can be either any one of the any buses on a motherboard or a bus that connects the motherboard to something else. By replacing the processor bus with the motherboard bus, the patentee necessarily broadened claim 1.

The third change, in which portable motherboard was changed with portable <u>and handholdable</u> motherboard, also broadens claim 1. Patentee did not replace portable with

handholdable, but instead said that the motherboard is both portable and handholdable. Surely then, the patentee did not add handholdable just to emphasize that the motherboard is portable. In fact, patentee added handholdable to claim 1 to cover products that were not covered by the original claim 1. The motherboards (300) shown in Figures 5, 8 and 9 of the Reissued Patent have sharp pins on them that can injure the hand, and they contain many components that conduct electricity and can shock the hand. This point is made clear by the following phrase of claim 1: "enabling electrical connection of circuitry external to said motherboard to said motherboard bus." Moreover, the patent specification emphasizes that motherboard 300 will become hot and will need natural air flow to keep it cool. Reissued Patent at column 4, lines 29-36 ("It will be appreciated that the location of the portable motherboard 300 external to the computer box improves the heat dissipation properties of the motherboard by exposing the motherboard to the natural air flow in the environment….")

For at least the above reasons, the motherboards shown in Figures 5, 8 and 9 are not handholdable, meaning that they cannot be operated while someone is holding them in his/her hand. However, to allege patent infringement against ASUS, Mobile Motherboard needed claims that cover a handholdable product, like the one shown below.



Dkt. 1 at page 7.

To that end, Mobile Motherboard broadened claim 1 to include a handholdable motherboard. ASUS's product above is not like the motherboards shown in the figures of the patent. ASUS's product does not have any sharp pins, or any exposed electrical circuits, and is designed such that it does not become hot. Unlike the motherboards shown in the figures of the patent, ASUS's product is safe to be handholdable. Indeed, the above picture shows a user holding the product even as it is being actively used. Thus, the patentee decided to broaden the claims to cover products like this one. The addition of handholdable to claim 1 necessarily broadened claim 1. Unfortunately for Mobile Motherboard, the broadening was untimely by more than five years.

## II. Legal Standards

Federal Rule of Civil Procedure 12(b)(6) permits a Court to dismiss a complaint where the plaintiff fails to plead sufficient facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 558 (citation omitted)). In considering a motion to dismiss for failure to state a claim, a court can consider the contents of the pleadings, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Cir. 2000).

According to the plain language of 35 U.S.C. § 251, no reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from

the grant of the original patent. The purpose of the law that a broadening reissue must be applied for within two years after patent grant is to set a limited time after which the public may rely on the scope of the claims of an issued patent. *In re Fotland,* 779 F.2d 31, 33 (Fed. Cir. 1985).

"Whether the claims of a reissue patent violate 35 U.S.C. § 251, and thus are invalid, is a question of law, which we review de novo." *Brady Constr. Innovations, Inc. v. Perfect Wall, Inc.,* 290 F. App'x 358, 363 (Fed. Cir. 2008) *quoting N. Am. Container, Inc. v. Plastipak Packaging, Inc.,* 415 F.3d 1335, 1349 (Fed. Cir. 2005). "In this case, we conclude that Brady's reissue claim 11, the only asserted claim, enlarged the scope of the claims of the original patent. Since Brady applied for reissue more than two years after issuance of the original patent, the reissue violated Section 251, and we affirm the district court's grant of summary judgment of invalidity." *Id.*

"A claim of a reissue application is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent. A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects." *Id. citing Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037 n.2 (Fed. Cir. 1987) and *In re Freeman,* 30 F.3d 1459 (Fed. Cir. 1994). *Id.*

According to the Patent office's Manual of Patent Examining Procedures at §1412.03: "A claim of a reissue application enlarges the scope of the claims of the patent if it is broader in at least one respect, even though it may be narrower in other respects. *See, e.g.,* 37 CFR 1.175(b). A claim in the reissue application which includes subject matter not covered by the patent claims enlarges the scope of the patent claims. For example, if any amended or newly added claim in the reissue contains within its scope any conceivable product or process which would not have infringed the patent, then that reissue claim would be broader than the patent claims. *Tillotson, Ltd. v. Walbro Corp.,* 831 F.2d 1033, 1037 n.2, 4 USPQ2d 1450, 1453 n.2 (Fed. Cir. 1987); *In re Ruth,* 278 F.2d 729, 730, 126 USPQ 155, 156 (CCPA 1960); *In re Rogoff,* 261 F.2d 601, 603, 120

6

USPQ 185, 186 (CCPA 1958). A claim which covers something that the original claims do not is a broadened claim. A claim would be considered a broadening claim if the patent owner would be able to sue any party for infringement who previously could not have been sued for infringement. Thus, where the original patent claims only the process, and the reissue application newly adds product claims, the scope of the claims has been broadened because a party could not necessarily be sued for infringement of the product based on the claims of the original patent (if it were made by a different process)."

### III.  Argument

Akin to a bus that takes passengers from one location to another location, a bus in an electrical circuitry takes information from one circuit component to another circuit component. Electrical circuitry typically includes a maze of buses that connect all components with each other, either directly or indirectly.

Claim 1 of Mobile Motherboard's original patent contained this phrase: "a central processor, a bus connected to said central processor, a connector for engagement with said first communication port for enabling electrical connection of said central processor through said <u>processor bus</u> to said internal bus of said computer box". Underlining added.

All independent claims of the original patent also included similar limitations. For more than seven years, the public relied on the scope of Mobile Motherboard's original patent. That scope clearly stated that the <u>processor bus</u> connects the central processor to the computer box.

Seven years later, Mobile Motherboard decided to broaden its claims. It changed the above phrase to: "a central processor, a motherboard bus connected to said central processor, a motherboard connector for engagement with said first communication port for enabling electrical connection of said central processor through said <u>motherboard bus</u> to said internal bus of said computer box". All the reissued independent claims include similar limitations.

The Reissued Patent is much broader than the original patent because a motherboard bus has a broader meaning than a processor bus. The Court can rule on this motion without doing claim construction to determine exact definitions a processor bus and a motherboard bus. As stated above, the issue presented in this motion is purely a question of law. For now, the Court only needs to make the determination that a motherboard bus has a broader meaning than a processor bus. The Court can do that readily. A processor bus connects the processor to something else. For example, with reference to Figures 6 and 7 of the Reissued Patent, the processor bus connects the Central Processing Unit 113 to the North Bridge 130. On the other hand, the motherboard bus can include that bus as well as any other bus on the motherboard. For example, that would include the bus that connects the North Bridge 130 to the South Bridge 140a, data bus 192 and data bus 190. For seven years, Mobile Motherboard led the public to believe that it only intended to cover a system in which the processor bus was used to connect the central processor to the computer box. Mobile Motherboard led the public to believe that it was free to make and sell other systems in which something other than the processor bus connected the central processor to the computer box. After seven years, Mobile Motherboard decided to broaden the claims such that any motherboard bus can connect the central processor to the computer box. Section 251 does not permit the use of reissued patents for such slight of the hand techniques that tick the public.

Next, in the Reissued Patent, Mobile Motherboard added this phrase to the original claim 1: "without a processor for computing operations". The inclusion of "without" almost always broadens a claim. Here, Mobile Motherboard is broadening the claim's coverage to cover dumb products that do not come with their own processors. While it is difficult to imagine a laptop or a mobile phone that does not come with its own processor chip (Intel, AMD, Nvidia, ARM and others), Mobile Motherboard has apparently discovered that someone is selling such "dumb" products and wanted to expand the coverage of its patent. But unfortunately for Mobile

Motherboard, Section 251 does not permit such an expansion to be requested more than two years after the issuance of the original patent.

Finally, Mobile Motherboard wanted to expand the claims to make a motherboard not only portable but also handholdable. To be handholdable, a product must be safe. As can be seen in Figures 5, 8 and 9, the motherboard 300 has sharp pins can cause hand injury. Also, a motherboard is an active conductor of electricity and heat, and it is not advisable to hold such a product in one's hand. A motherboard is a portable product, but it is not handholdable. Mobile Motherboard wishes to capture a product that is not just portable but also safe enough to be handholdable. Unfortunately, Mobile Motherboard is untimely by more than five years.

## IV.   Conclusion

For these reasons, Defendant Asustek Computer Inc. respectfully requests the Court dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and grant such other and further relief to which Defendant may be entitled.

Respectfully submitted,
Dated:  November 6, 2023

By: /s/ Vinay V. Joshi

Vinay V. Joshi
AMIN, TUROCY & WATSON LLP
Vinay V. Joshi (Lead Attorney)
vjoshi@ATWiplaw.com
Cal Bar No. 213487
Andrew T. Oliver
aoliver@ATWiplaw.com
Cal Bar No. 226098
160 West Santa Clara Street, Suite 975
San Jose, CA  95113
Telephone: 650-393-0634
Facsimile: not used

*Attorneys for Defendant*
*ASUSTeK COMPUTER, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record who have consented to electronic service.

/s/ Vinay V. Joshi
Vinay V. Joshi
