**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| **MOBILE MOTHERBOARD INC.,** | C.A. No. 6:23-cv-325-KC |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **ASUSTEK COMPUTER INC.,** | **PATENT CASE** |
| Defendant. | |

**<u>MOBILE MOTHERBOARD'S OPPOSITION TO DEFENDANT ASUSTEK
COMPUTER INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
UNDER FED. R. CIV. P. 12</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES .................................................................................... ii

TABLE OF EXHIBITS .......................................................................................... iii

I.     INTRODUCTION AND STATEMENT OF THE ISSUES ................................ 1

II.    STATEMENT OF FACTS ............................................................................... 2

     A.    The limitation "said processor bus" was amended to "said motherboard bus" to clarify the antecedent basis of the term referring to the portable motherboard comprising "a bus connected to said processor".................................... 2

     B.    The patent specification discloses embodiments of a "computer box" with and without a processor so, at the suggestion of the examiner during prosecution of the reissue patent, "without a processor for performing computing operations" was added as a limitation to narrow the term "computer box".............................. 4

     C.    As disclosed in the specification and the prosecution history, a portable device is not necessarily handholdable so "a portable *and handholdable* motherboard external to the housing" is narrower than a portable motherboard ........................ 5

III.   STATEMENT OF THE LAW ........................................................................ 7

IV.   ARGUMENT ................................................................................................. 8

     A.    Amending "said processor bus" to "said motherboard bus" was a clarifying edit that did not change the scope of the claim ............................................................ 8

     B.    "[A] computer box *without a processor for performing computing operations*" necessarily narrows the term "computer box" because the term "computer box" includes boxes with and without a processor ........................................................ 10

     C.    A portable device is not necessarily handholdable so "a portable *and handholdable* motherboard external to the housing" is narrower than a portable motherboard ................................................................................................. 12

CONCLUSION ..................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................. 7

*ASK Sydney, LLC v. Amazon.com Servs., LLC*,
  2023 U.S. Dist. LEXIS 141219 (W.D.Tex. Aug. 14, 2023) ..................................... 7

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) .................................................................................. 7

*Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*,
  246 F.3d 1336 (Fed.Cir. 2001) .............................................................................. 10

*Data Engine Techs. LLC v. Google LLC*,
  906 F.3d 999 (Fed.Cir. 2018) .................................................................................. 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed.Cir. 2005) (en banc) ............................................................. 13

*Tillotson, Ltd. v. Walbro Corp.*,
  831 F.2d 1033 (Fed.Cir. 1987) ................................................................................ 7

*Vervain, LLC v. Micron Tech., Inc.*,
  2022 U.S. Dist. LEXIS 54 (W.D.Tex. Jan. 3, 2022) ............................................... 7

**Statutes**

35 U.S.C. §251 ................................................................................................ 1, 2, 6, 7

## TABLE OF EXHIBITS

Exhibit A       United States Reissue Patent No. RE48,365

Exhibit B       United States Patent No. 7,990,724

Exhibit C       December 5, 2018, Preliminary Amendment, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit D       June 7, 2019, Office Action, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit E       August 23, 2019, Response to Office Action, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit F       September 19, 2019, Final Rejection, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit G       December 17, 2019, Response to Office Action, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit H       February 24, 2020, Office Action, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit I       July 23, 2020, Response to Office Action, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit J       August 12, 2020, Final Office Action, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Exhibit K       October 14, 2020, Notice of Allowance, Appl. No. 16/210,598 (U.S. Reissue Patent No. RE48,365)

Plaintiff Mobile Motherboard, Inc. ("Mobile Motherboard") files this opposition to Defendant Asustek Computer Inc.'s ("Defendant") Motion to Dismiss Plaintiff's Complaint Under Fed.R.Civ.P. 12.

## I.     INTRODUCTION AND STATEMENT OF THE ISSUES

Defendant' motion contends that asserted claim 1 is invalid under 35 U.S.C. §251 because the reissued claim 1 in reissue patent RE48,365 (""365 Reissue") was amended to be broader than original claim 1 of U.S. Patent No. 7,990,724 ("'724 patent") by (1) changing "processor bus" to "motherboard bus," (2) adding the limitation "without a processor for performing computing operations," and (3) adding the limitation "handholdable." Defendant's arguments rely on unsupported allegations that ignore the patent's specification and disregard the prosecution history demonstrating that the amendments did not broaden the claim.

Changing "processor bus" to "motherboard bus" was necessary in the prosecution history to clarify an antecedent basis argument by the examiner. The examiner agreed that the "said processor bus" always referred to the bus of the motherboard (*i.e.*, "motherboard bus"), not a processor bus. Defendant therefore misreads the claim by arguing that the "said processor bus" is a bus of the processor, rather than a bus on the motherboard connected to a processor on the motherboard.

Adding the limitation "without a processor for performing computing operations" to the term "computer box" necessarily narrowed the claim limitation. The patent specification discloses that "computer box" can be provided with and without a processor, so the term "computer box" is narrowed by limiting it to "without a processor for performing computing operations." Furthermore, the limitation was added in response to the examiner explicitly suggesting that applicant add the limitation to narrow the term "computer box" to avoid prior art.

With respect to "a portable and handholdable motherboard," during the prosecution history of the reissue patent, the examiner explicitly addressed the issue of whether the amended term was improperly broadening the claim language more than two years after issuance. When the term was amended to read "a portable and handholdable motherboard," the examiner withdrew a rejection that applicant was improperly broadening the claim.

Defendant's motion should therefore be denied because the claim limitations narrowed or did not affect the scope of the claim, so claim 1 is not invalid under 35 U.S.C. §251.

## II.    STATEMENT OF FACTS

Mobile Motherboard asserts that Defendant infringes claim 1 of reissue patent RE48,365 ("'365 Reissue"). The patent that preceded the '365 Reissue issued on August 2, 2011, as U.S. Patent No. 7,990,724 ("'724 patent"). (Ex. A at cover; Ex. B ('724 patent")). Applicant filed a reissue application for the '724 patent on December 5, 2018, seeking to add new narrower claims that depended from claim 1. (Ex. C at Reissue Application Declaration by the Inventor (ninth page of Exhibit C)). During the course of the prosecution of the reissue application, Applicant made several amendments to claim 1. Three of the amendments are at issue here: "computer box *without a processor for performing computing operations*," "a portable *and handholdable* motherboard external to the housing," and "said [*processor*] *motherboard* bus."[1] (Ex. A at col. 5:5-6, 11-12, 16). The following sections highlight portions of the specification and prosecution history of the '365 Reissue with respect to these limitations challenged in Defendant's Motion to Dismiss.

### A.    The limitation "said processor bus" was amended to "said motherboard bus" to clarify the antecedent basis of the term referring to the portable motherboard comprising "a bus connected to said processor"

The original claim 1 of the '724 patent, in relevant part, required two buses, one bus internal

---

[1] Bold and italicized language was added to the claim in the '365 Reissue, whereas bracketed italicized language was deleted from the claim.

to the computer box, and one bus in the portable motherboard connected to the central processor in the portable motherboard:

>   said computer box comprising:
>
>>   housing; circuitry enclosed by said housing; ***a bus internal to said housing*** connected to said circuitry; and a first communication port for enabling electrical connection of circuitry external to said housing to said internal bus; and
>
>   a portable motherboard external to the housing comprising:
>
>>   a central processor, ***a bus connected to said processor***, a connector… for enabling electrical connection of said processor through ***said processor bus*** to ***said internal bus*** of said computer box; one or more second communication ports for enabling electrical connection of circuitry external to said motherboard to ***said motherboard bus***."

(Ex. B at 5:1-11) (bold/italics added).  In claim 1 of the original '724 patent, the bus in the computer box is later referred to as "said internal bus" and the bus connected to the processor in the portable mother board is later referred to as "said processor bus" or "said motherboard bus."  (Ex. B at 4:66-67, 5:7-8, 11).

During the prosecution of the '365 Reissue, the examiner rejected the term "said motherboard bus" as indefinite for lacking an antecedent basis.  (Ex. D at 5).  The examiner contended that the "only bus recited in the motherboard in the claims prior to the limitation ['said motherboard bus'] is the processor bus or a bus connected to the processor."  (*Id.*).

Applicant responded that "one of ordinary skill in the art would clearly understand that the limitation '***a portable motherboard***' includes '***a bus connected to said processor***' and that the limitation '***said motherboard bus***' refers to the '***a bus connected to said processor.***'"  (Ex. E at 21).  "Said motherboard bus" therefore had an antecedent basis. (*Id.*).  The examiner found the argument persuasive and withdrew the indefiniteness objection finding that "a bus connected to said processor" provided antecedent basis for "said motherboard bus."  (Ex. F at 4).

Despite withdrawing the objection, the examiner inadvertently repeated the rejection in the

3

next office action leading the application to respond again.  (Ex. F at 4; Ex. H at 4-5).  Applicant again responded that it thought it was clear that "a bus connected to said processor" "is a limitation of the 'motherboard external to the housing" such that an antecedent basis was supported.  (Ex. G at 10).  Nevertheless, applicant amended "a bus connected to said processor" to "a *motherboard* bus connected to said processor" to make "abundantly clear [ ] that the recited 'a bus connected to said processor' (i.e. of the 'a motherboard external to the housing comprising:' provides the antecedent support for the 'said motherboard bus' limitation." (*Id.* at 2, 10-11).  The amendment was accepted and the examiner affirmed withdrawing the indefiniteness rejection.  (Ex. H at 4-5).

At the same time and for the same reason, applicant amended "said processor bus to said internal bus of said computer box" to "said motherboard bus to aid internal bus of said computer box."  (Ex. I at 2).  This amendment was "made for the purposes of clarity and to avoid an antecedent basis issue with 'processor bus.'"  (Ex. I at 9).  "Said processor bus" always referred to the "motherboard bus."  (*Id.*).

> **B.**  **The patent specification discloses embodiments of a "computer box" with and without a processor so, at the suggestion of the examiner during prosecution of the reissue patent, "without a processor for performing computing operations" was added as a limitation to narrow the term "computer box"**

Claim 1 of the original '724 patent, in relevant part, required  "a computer box, said computer box comprising: a housing; circuitry enclosed by said housing; a bus internal to said housing connected to said circuitry; and a first communications port for enabling electrical connection of circuitry external to said housing to said internal bus;…."  (Ex. B at 4:60-67).

The specification explains that "a computer box" is a "form factor that in the prior art contains a motherboard with a central processing unit," such as a personal computer or a laptop (Ex. B at 2:49-53, 5:30-32).  The "computer box" can have a central processor; alternatively, the "computer box" can be provided without a central processor.   (Ex. B at 4:46-43; 5:38-40).

4

Although a "computer box" may have a central processor, such a central processor may be insufficient to perform certain computing operations.   (Ex. B at 2:4-14; 4:32-43; 5:30-32).   In accordance with disclosures in the specification that a "computer box" may or may not have a central processor, original independent claim 1 had no limitation for a central processor in the "computer box." (Ex. B at 4:60-67). On the other hand, original independent claim 11 of the '724 patent explicitly required that the "computer box" had a central processor.  (*See* Ex. B at 5:38-40).

During the prosecution of the '365 Reissue, in response to a rejection over prior art, patentee argued that the "computer box" limitation in claim 1 did not have a processor and therefore the prior art that disclosed a "computer box" with a processor did not satisfy the "computer box" limitation in claim 1.  ( Ex. E at 36).  However, the examiner disagreed.  The examiner state that the "computer box" limitation in claim 1 did not have a limitation excluding a processor from the computer box but such a limitation could be added:

> Claim 1 does not recite a "computer box *sans a* processor".  If Applicant wishes to claim a 'computer box' without a processor, Applicant can amend the claim. However, there's nothing in current claim 1 that precludes the "computer box" from having things other than what's specifically claimed, because the transition phrase used is open ended "comprising".

(Ex. F at 8-9).

To address the examiner's rejection, applicant amended claim 1 to require "a computer box sans a processor for performing computing operations," which applicant later changed to "a computer box without a processor for performing computing operations."  (Ex. G at 2; Ex. I  at 2, 8).  The claim eventually issued with the added limitation.  (*See* Ex. K at 2; Ex. A at 5:5-6).

### C.   As disclosed in the specification and the prosecution history, a portable device is not necessarily handholdable so "a portable *and handholdable* motherboard external to the housing" is narrower than a portable motherboard

Claim 1 of the original '724 patent, in relevant part, required "a portable motherboard external to the housing." (Ex. B at 5:1-2).  The specification states that the invention overcomes

the shortcomings of the prior art by "providing a motherboard that is portably configured to serve more than one computer device." (*Id.* at 1: 42-44). The invention therefore "comprises" a portable motherboard. (*Id.* at 1:48-49; 4:59; 5:1). In one embodiment of the invention, the specification discloses that the portable motherboard "comprises a hand held substrate, a microprocessor being attached to said substrate." (*Id.* at 2:7-9).

The term "hand held" was initially added in the '365 Reissue as dependent claims 21 and 24, which depended from claims 1 and 11 respectively: "The computer system of claim [1, 11] wherein said portable motherboard is configured to be hand-held." (Ex. C at 5).

During the prosecution of the '365 Reissue, the examiner rejected claim 1 because, in part, a prior art reference disclosed a PC tower (12"x9"x4") that could be carried in an attaché case, which was portable. (Ex. F  at 15-16; Ex. G at 28). In response, applicant replaced the term "portable" with "handholdable" arguing that the prior art did not disclose a "handholdable motherboard." (Ex. G at 28). Applicant cancelled pending new claims 21 and 24 because the amendment now incorporated "handholdable" into claim 1. (*Id.*). The examiner rejected changing the limitation "portable motherboard" to "handholdable motherboard," finding the "handholdable motherboard" is broader than "portable motherboard." (Ex. H at 8). Citing to 35 U.S.C. §251, the examiner stated that broadening reissue claims was not allowed after the two year statutory period after issuance. (Ex. H at 8)

Applicant responded that "handholdable" is narrower than "portable" because "any 'handholdable' motherboard would be 'portable,' but not all 'portable' motherboards would be 'handholdable.'" (Ex. I at 17). Regardless, applicant amended claim 1 to read that the "motherboard is 'portable and handholdable,'" which "clearly narrows the scope of the claims since the motherboard must now be 'handholdable' as well as 'portable.'" (*Id.*).

In response to the claim now reading that the motherboard is both "portable and handholdable," the examiner withdrew the rejection that the claim was broadening the reissue application outside the statutory two year period.  (Ex. J at 3).

## III.   STATEMENT OF THE LAW

Dismissal under Rule 12(b)(6) is appropriate only if a party has not provided fair notice of the claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

> A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." The complaint must be liberally construed in favor of the [pleading party], and all facts pleaded in the complaint must be taken as true. The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citations omitted).

"Courts may take judicial notice of government records, like prosecution history available on the U.S. Patent & Trademark Office's Public PAIR site, even when resolving a Rule 12(b)(6) motion." *Vervain, LLC v. Micron Tech., Inc.*, 2022 U.S. Dist. LEXIS 54, *15 n. 2 (W.D.Tex. Jan. 3, 2022); *ASK Sydney, LLC v. Amazon.com Servs., LLC*, 2023 U.S. Dist. LEXIS 141219, *19 (W.D.Tex. Aug. 14, 2023); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed.Cir. 2018).  "[T]he need for careful interpretation of the original and reissue claims in light of the specification, the prosecution history, and the alleged industry practice" to analyze a motion asserting violation of 35 U.S.C. §251 may require denial of a motion as premature.  *Tillotson, Ltd. v. Walbro Corp.*, 831 F.2d 1033, 1039 (Fed.Cir. 1987) (denying a motion for summary judgment asserting violation of 35 U.S.C. §251).  "[C]laim interpretation is ultimately a question of law, but resolution of that question turns in significant part on underlying facts."  *Id.*

## IV.     ARGUMENT

Defendants arguments that (1) changing "processor bus" to "motherboard bus," (2) adding the limitation "without a processor for performing computing operations," and (3) adding the limitation "handholdable" broadened the claim is inconsistent with the prosecution history, the specification, and the plain reading of the terms.   Although Defendant argues that claim construction is unnecessary, Defendant surreptitiously proposes constructions for "processor bus," "motherboard bus," "without a processor for performing computing operations," and "handholdable," and does so without any support for its assertions.   (*E.g.*, Doc. #11 at 8, line 6 ("A processor bus connects…."); *id.* at line 8 ("On the other hand, the motherboard bus can include…"); *id.* at line 19 ("The inclusion of 'without' almost always broadens a claim."); *id.* at 9, line 4 ("To be handholdable, a product must be safe.")).   Defendant then relies on those proposed constructions to support its argument.   When the specification and the prosecution history are analyzed, Defendant's proposed constructions are not supported by the evidence, and there is no support that the amended claim language broadens the claim.   At a minimum, Defendant's motion raises substantial claim construction issues that are not appropriately decided at the motion to dismiss phase of the case.   The Court should therefore deny Defendant's motion.

### A.     Amending "said processor bus" to "said motherboard bus" was a clarifying edit that did not change the scope of the claim

Defendant's argument that amending the claim to "said motherboard bus" is based on misstating the claim language as a "processor bus."   The correct original claim language is "***said*** processor bus," with "said" referring back to an earlier term in the claim.   Without referring to the claim language and how "bus" is used in the claims, Defendant speculates as to the different meanings of "processor bus" and "motherboard bus" when those terms were determined to have the same meaning in the prosecution history.   In the original claim language, the motherboard has

8

"a bus connected to said processor" and "said processor bus" refers to that "bus."  (Ex. B at 5:1-7).  Similarly, original claim 1 used the term "said motherboard bus" that also referred back to the same "a bus connected to said processor."  (Ex. B at 5:1-11).  In other words, the terms "said processor bus" and "said motherboard bus" referred to the same thing.  This was explained in the prosecution history when the examiner initially rejected "said motherboard bus" as being indefinite for lacking antecedent basis.  (Ex. D at 5).

After applicant explained that a person of ordinary skill in the art would understand that "said motherboard bus" necessarily referred to the "a bus connected to said processor," the examiner withdrew the rejection.  (*Supra* II(A)).  To make "abundantly clear" that "bus" referred to in the "motherboard" limitation was the "motherboard bus," applicant amended the claim to clarify that "a bus connected to the said processor" was "a motherboard bus connected to said processor" and "said processor bus" was "said motherboard bus."  (Ex. G at 10-11).  The examiner agreed that the amendments properly identified the antecedent basis consistent with a person of ordinary skill in the art and withdrew the rejection.  (Ex. H at 4-5).  The amendment from "said processor bus" to "said motherboard bus" therefore did not change the scope of the claim language and merely clarifying the prior language.

Furthermore, Defendant's analysis of the images in the patent specification allegedly distinguishing different buses on the motherboard is also incorrect.  Buses for the motherboard shown in the patent drawings service more than just the processor.  (*E.g.*, Ex. A at FIG. 6 (bus 192); FIG. 7 (bus 190)).  For example, bus 190 provides electrical connection of central processing unit 113, North Bridge 130, and South Bridge 140 to circuitry 140 residing inside computer box 20. (Ex. A at 4:6-11).  These preferred embodiments are all consistent with the claim language of the "a bus connected to said processor" regardless of whether the bus is later referred to

interchangeably as "said processor bus" or "said motherboard bus."   The amendment was therefore a clarification rather than a substantive change and therefore did not broaden the scope of the claim.

### B.   "[A] computer box *without a processor for performing computing operations*" necessarily narrows the term "computer box" because the term "computer box" includes boxes with and without a processor

The crux of Defendant's argument on the "computer box" term is the unsupported attorney argument that "[t]he inclusion of 'without' almost always broadens a claim." (Doc. #11 at 8, line 19). Defendant gives no examples because this argument is nonsense. Is "a computer without a display" broader than "a computer"? Is "a motherboard without housing" broader than "a motherboard"? Under what plain English interpretation is "a computer without a processor for performing computing operations" broader than "a computer box"? The opposite of Defendant's argument is true: adding language requiring a limitation to be "without" something narrows the limitation. The specification and the prosecution history show that adding "without a processor for performing computing operations" narrows the claims.

Mobile Motherboard did not "broaden the claim's coverage to cover dumb products that do not come with their own processors," as Defendant contends. (Doc. #11 at 8). The specification explains that "a computer box" can be provided either without a processor, or with a processor. (Ex. B at 4:46-43; 5:38-40). This plays out in the claims. Original claim 1 of the '724 patent required "a computer box" and was silent as to whether the "computer box" has a processor. (Ex. B at 5:1-11). This means that "a computer box" can be satisfied by both a "computer box" with a processor and a computer box without a processor. *E.g.*, *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1348 (Fed.Cir. 2001) ("'comprising' creates a presumption that the body of the claim is open."). Claim 11 of both the '724 patent and the Reissue '365 patent require that the "computer box" comprise "a first central processor enclosed by said

housing," *i.e.*, a computer box with a processor.  (Ex. A at 5:47-49; Ex. B at 5:38-40).   Whereas, claim 1 was amended in the Reissue '365 patent to require that the "computer box" is "without a processor for performing computing operations," thus narrowing claim 1.

Defendant's reference to the "computer box" being a personal computer, a laptop, a server, or a mobile phone in dependent claims 8-10 (*See* Doc. #11 at 3) is consistent with the specification and claim 1.  The specification explains that a personal computer, a laptop, a server, or a mobile phone can serve as a housing of the computer box to connect the motherboard. (Ex. A at 2:58-62). For example, the motherboard can be connected to a laptop to use the screen and keyboard, and the motherboard provides the processor to perform computing operations, not the laptop.  (Ex. A at 2:4-14).  Alternatively, the specification explains that the motherboard provides the processor to perform computing operations for a personal computer or laptop that has insufficient processing power and therefore is a computer box without a processor for performing computing operations. (Ex. A at 4:46-61).   Dependent claims 8-10 therefore included computer boxes regardless of whether a personal computer, a laptop, a server, or a mobile phone had a processor for performing computing operations.

The prosecution of the Reissue '365 patent is also directly contrary to Defendant's argument.  The examiner found that the term "computer box" could be satisfied regardless of whether the "computer box" had a processor.  (Ex. F at 8-9).  The examiner then ***explicitly suggested*** that applicant add the limitation to narrow the claim to address a prior art reference, which applicant did.  (*Id.* at 8).  The plain reading of the claim term, the specification, and the prosecution history all demonstrate that "a computer box without a processor for performing computing operations" narrows the term "computer box."

11

C.   **A portable device is not necessarily handholdable so "a portable *and handholdable* motherboard external to the housing" is narrower than a portable motherboard**

Defendant's argument that "handholdable" broadened "a portable motherboard external to the housing" is contradicted by its own argument.  Original claim 1 in the '724 patent required that the motherboard be only "portable." Defendant argues that the amended "and handholdable" language now broadens the claim because it "make[s] a motherboard not only portable ***but also*** handholdable." (Doc. #11 at 9) (emphasis added).  In other words, Defendant argues that by adding another recitation layer of "handholdable" onto the existing "portable" recitation of the original claim 1, the combination of recited limitations has broadened the claim.  There can be no reading of the claim in which adding a further limitation of "and handholdable" to the pre-existing limitation "portable" broadens the claim.

Defendant then makes the illogical and unsupportable claim construction argument that handholdable means that the product must be safe to hold but motherboard pins can cause hand injuries and is therefore not handholdable.  (Doc. #11 at 9).  Once again, this is specious attorney argument.  There is no evidence in the intrinsic record (or any extrinsic evidence) to support the unfounded argument propounded by Defendant that motherboard pins can cause hand injuries such that the motherboard is not handholdable. If true, no one would ever handle a microchip with pins, which is something that technicians and others do when assembling computer components. Moreover, the specification explains that the motherboard can comprise "a hand held substrate" to which a microprocessor, a connector, basis input/output BIOS, memory, and expansion slots can be attached.  (Ex. A at 2:15-24).  In this embodiment, the allegedly dangerous motherboard pins are safely attached to a substrate to alleviate any peril from holding the motherboard in your hand. Regardless, claims are not confined to preferred embodiments. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir. 2005) (*en banc*). The fact of the matter is that a motherboard with pins is

much safer than, for example a knife.  Is Defendant contending that a knife is not handholdable because it is sharp?  Is a heated pan (which is much hotter than a motherboard) not handholdable because you have to use an oven mitt to hold it?  Defendant's claim construction of "handholdable" cannot be hot or have pointy parts makes no sense.  Regardless, Defendant's marketing material shows that the accused product is both portable and handholdable so the amendment to the reissue claim 1 did not impact whether the accused product infringes. (Doc. #1 at 6 ("A PC in hand, whenever you need it")).

But the bigger picture, and where Defendant is woefully off the mark, is that the motherboard is not limited to the appearance in Figures 5, 8, and 9 that Defendant relies on. *Phillips*, 415 F.3d at 1323.  The specification and claims are not limited to "motherboard pins." The specification as filed in the original patent, as issued from the original patent filing, and as issued from the reissue patent filing all disclose "a *motherboard connector* for engagement with said first communication port for enabling electrical connection of said central processor through said processor motherboard bus to said internal bus of said computer box." (*See*, *e.g.*, Exs. A, B, claim 1.) The "motherboard pins" are simply an illustrative example of a "motherboard connector." For Defendant to so limit the claim to embodiments in the specification is contrary to the black letter law on claim interpretation. *Phillips*, 415 F.3d at 1323 ("For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.").

At the end of the day, it is unclear what Defendant is trying to do with "safety" since the specification teaches the handholdability of the motherboard and so the motherboard is safe to the hand.  If Defendant is trying to read "safety" into the "handholdable" limitation, that would be contrary to the black letter law on claim interpretation. *Id.*

13

The specification also demonstrates that "handholdable" is narrower than "portable." The specification first describes the motherboard as "portable." (Ex. A at 1:56-57). Then another embodiment narrows the limitation by explaining that "[t]he portable motherboard I have devised *may further comprise* a hand held substrate…." (Ex. A at 2:15-16)(emphasis added). In other words, the patent teaches that the portable motherboard *may but need not* be handholdable and that "handholdable" is a further qualification on "portable". This is consistent with the ordinary meaning of the terms. For example, luggage may be portable but not handholdable. "Handholdable" therefore narrows "portable."

The prosecution history also explicitly addressed whether this term improperly broadened the claim. As explained above, the examiner initially rejected amendments to "a portable motherboard" as improperly broadening the claim but withdrew the rejection when the claim was amended to read "a portable and handholdable motherboard." (*Supra* §II(C)). There is no evidence in the record supporting that "portable and handholdable" is broader than "portable."

In sum, when the '365 Reissue specification and prosecution history are liberally construed in favor of Mobile Motherboard, as required at the motion to dismiss phase of the case, the claims were not broadened by (1) adding the limitation "without a processor for performing computing operations," (2) adding the limitation "handholdable," and (3) changing "processor bus" to "motherboard bus." Defendant's motion must therefore be denied.

## CONCLUSION

For the reasons stated above, Mobile Motherboard respectfully requests that the Court deny Defendant Asustek Computer Inc. Motion to Dismiss (Doc. #10) because reissue claim 1 is not broader than original claim 1.

Dated:  December 1, 2023               Respectfully submitted,

By:  */s/David R. Bennett*
David R. Bennett
(Illinois Bar No. 6244214)
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
Telephone: (312) 291-1667
e-mail:  dbennett@directionip.com

**ATTORNEY FOR PLAINTIFF**
**MOBILE MOTHERBOARD INC.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 1, 2023 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/*David R. Bennett*_____
David R. Bennett