# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **MOBILE MOTHERBOARD INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| **v.** | § | **WA-23-CV-00325-KC** |
| | § | |
| **ASUSTEK COMPUTER INC.,** | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Presently before the Court is Defendant Asustek Computer Inc.'s (ASUS) "Motion To Dismiss Plaintiff's Complaint" (ECF No. 11) filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Mobile Motherboard Inc. (MMI) brought this lawsuit against ASUS, alleging infringement of U.S. Reissue Patent No. RE48,365 (the RE'365 patent). The Honorable District Judge Kathleen Cardone referred the motion to the undersigned Magistrate Judge. In the motion, ASUS argues that MMI's complaint should be dismissed because the reissue patent is invalid under 35 U.S.C. § 251. For the reasons set forth below, the Court RECOMMENDS that ASUS's motion be denied.

## I.   BACKGROUND

The RE'365 patent, entitled "Mobile Motherboard," is directed to a motherboard that is "portably configured to serve more than one computer device."[1] It is a reissue of U.S. Patent No. 7,990,724 (the '724 patent), which was issued to Paul Juhasz, its inventor, on August 2, 2011. In December 2018, more than seven years after the '724 patent was issued, MMI, the assignee of the patent, filed a reissue application, No. 16/210,598 (the RE'598 application), pursuant to 35

---

[1] RE'365 patent at col. 1, ll. 51–52; *see also id.* at Abstract.

U.S.C. §§ 251–52, to surrender the '724 patent and reissue claims by reason of the patentee claiming more or less than he had the right to claim in the patent.[2]  On December 20, 2020, that application issued as the RE'365 patent, whose claims differ, in language, from the claims of the '724 patent; the two patents however share identical abstract and specification.

In May 2023, MMI brought this lawsuit against ASUS.  MMI alleges that ASUS sells mobile motherboard technology, such as ASUS VivoStick (a pocket-sized Windows PC), which, when used by its end users in conjunction with an HD TV, monitor, or projector for smart screen display, infringes at least claim 1 of the RE'365 Patent.[3]  On November 6, 2023, ASUS filed the instant motion to dismiss.[4]  MMI filed a response to the motion on December 1, 2023,[5] and ASUS followed by filing a reply on December 8, 2023.[6]  The motion was referred to the undersigned Magistrate Judge on December 12, 2023.

## II.   STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When "the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (ellipses omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)).  On a Rule 12(b)(6)

---

[2] Compl. ¶ 7, ECF No. 1; Reissue Appl. Decl. by Inventor, RE'598 application (USPTO Dec. 5, 2018).

[3] Compl. ¶¶ 22, 26.

[4] Def.'s Mot. to Dismiss, ECF No. 11.

[5] Pl.'s Opp'n to Def.'s Mot. to Dismiss [hereinafter, Pl.'s Resp.], ECF No. 13,

[6] Def.'s Reply in Supp. of Its Mot. to Dismiss [hereinafter, Def.'s Reply], ECF No. 14.

motion, a court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe* ex rel. *Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (*en banc*) (internal quotes omitted).[7]  It accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).

## III.   DISCUSSION

By its motion, ASUS argues that the reissue patent is invalid under 35 U.S.C. § 251.  The reissue statute provides in relevant part:

> Whenever any patent is, through error, deemed wholly or partly inoperative or invalid, . . . by reason of the patentee claiming more or less than he had a right to claim in the patent, the Director shall, on the surrender of such patent . . . , reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent.  No new matter shall be introduced into the application for reissue.

35 U.S.C. § 251(a).[8]  The statute also says that "[n]o reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."  *Id.* § 251(d).  Thus, a patentee is entitled to a reissue enlarging or broadening the scope of the original claims—so long as the reissue application is filed within

---

[7] To meet the "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[8] The most-recent prior version of § 251 included the phrase "without any deceptive intention" after the word "error"; the Leahy-Smith America Invents Act, enacted in 2011, deleted that phrase from the current version of the statute.  *In re McDonald*, 43 F.4th 1340, 1346 (Fed. Cir. 2022) (citing the Act, Pub. L. No. 112–29, § 20(b)(1)(B), 125 Stat. 284, 333–34 (2011) (effective Sept. 16, 2012)); *see also Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1377 n.5 (Fed. Cir. 2020) ("'Eliminating the various deceptive-intent requirements moves the U.S. patent system away from the 19th century model that focused on the patent owner's subjective intent, and towards a more objective-evidence-based system that will be much cheaper to litigate and more efficient to administer.'" (quoting 157 Cong. Rec. S1378 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl))).

two years from the grant of the original patent.[9]  "[T]he claims of a reissue patent filed after that

date are invalid if they enlarge the scope of the original claims."  *Forest Lab'ys, Inc. v. Ivax*

*Pharms., Inc.*, 501 F.3d 1263, 1270 (Fed. Cir. 2007).

Whether a reissue patent is invalid for violating § 251 is a question of law.[10]  *AIA Eng'g*

*Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264, 1271 (Fed. Cir. 2011).  A violation of § 251 is an

affirmative defense.  35 U.S.C. § 282(b)(3)(B) (listing failure to comply with "any requirement

of section 251" as a defense); *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1583 (Fed. Cir.

1995).  Because a reissue patent, like a regularly issued patent, is entitled to "the presumption of

validity," *Superior Fireplace Co. v. Majestic Prod. Co*., 270 F.3d 1358, 1367 (Fed. Cir. 2001)

(citing 35 U.S.C. § 282(a) ("A patent shall be presumed valid.")), a patent-infringement

defendant has the burden of persuasion to prove by clear and convincing evidence that the

reissue patent is invalid, *id.*; *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir.

1985).

A change in a reissue claim "that is only clerical"—in that it "merely clarified or

corrected" the original claims—"does not necessarily broaden the scope of the claims and so

---

[9] The reissue statute "is remedial in nature, based on fundamental principles of equity and fairness." *In re Weiler*, 790 F.2d 1576, 1579 (Fed. Cir. 1986).  In enacting the statute, "Congress struck a balance between 'the competing interest of providing a patentee with an opportunity to correct errors of inadequate claim scope with the public interest in finality and certainty of patent rights, and legislated in favor of allowing the patentee to correct its errors through broadening, if necessary.'" *In re McDonald*, 43 F.4th at 1345–46 (quoting *In re Youman*, 679 F.3d 1335, 1342 (Fed. Cir. 2012)).  Moreover, by legislating that a patentee must file for a broadening reissue patent within two years of the issuance, Congress provided the public with a safeguard against this broadening: "[T]he public is on notice for two years following the issuance of a patent that the patent can be broadened to recapture matter dedicated to the public through error; after the two year period, the public can definitively rely on the scope of the patent claims." *In re Youman*, 679 F.3d at 1342 (internal quotes omitted).

[10] *See also Forum US, Inc. v. Flow Valve, LLC*, 926 F.3d 1346, 1351 (Fed. Cir. 2019) ("The legal conclusion regarding § 251 compliance, however, can involve underlying questions of fact. . . .  [T]he court may consider expert evidence to ascertain the meaning of a technical or scientific term or term of art so that the court may be aided in understanding not what the instruments mean but what they actually say." (cleaned up)).

does not render the patent invalid." *Forest Lab'ys*, 501 F.3d at 1270.  A reissue "claim is broader in scope than the original claims if it contains within its scope any conceivable apparatus or process which would not have infringed the original patent." *Network-1 Techs., Inc. v. Hewlett-Packard Co*., 981 F.3d 1015, 1028 (Fed. Cir. 2020) (internal quotes omitted).  "'A reissue claim that is broader in any respect is considered to be broader than the original claims even though it may be narrower in other respects.'" *Brady Const. Innovations, Inc. v. Perfect Wall, Inc*., 290 F. App'x 358, 363 (Fed. Cir. 2008) (quoting *Tillotson, Ltd. v. Walbro Corp*., 831 F.2d 1033, 1037 n.2 (Fed. Cir. 1987)).

"Whether a claim amendment during reissue examination enlarged the scope of the claim is a matter of claim construction." *AIA Eng'g*, 657 F.3d at 1271.  That inquiry "requires the application of claim construction principles." *Id.* at 1272.  "To ascertain the scope and meaning of a claim, we consider the claim language, the specification, the prosecution history, and the relevant extrinsic evidence." *Id.*  "Comparison of the scope of the reissue claims with the claims of the original patent . . . is performed from the perspective of one having ordinary skill in the art." *Forest Lab'ys*, 501 F.3d at 1270.

As a preliminary matter, ASUS assures the Court that claim construction is unnecessary to decide the motion in its favor, Def.'s Mot. to Dismiss at 8, but, as MMI points out, ASUS's subsidiary arguments sound in claim construction in that ASUS proposes constructions of certain terms and then relies on those constructions to support its feature argument that the reissue claims are broader than the original claims, Pl.'s Resp. at 8 (citing AUSA's proposed constructions).  Courts have held that claim construction is generally not proper at the pleading stage, in particular, before claim construction proceedings.  *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018) (reversing district court's grant of Rule 12(b)(6)

motion where defendant's arguments "read like classic *Markman* arguments"); *Tolmar Therapeutics, Inc. v. Foresee Pharms. Co*., No. 21CV15782 (EP) (CLW), 2022 WL 13858026, at *6 (D.N.J. Oct. 24, 2022) (denying Rule 12(c) motion because the movant's arguments depend on claim constructions, but the claim construction proceedings had not yet occurred).[11]  Still, courts often do entertain a Rule 12 motion before claim construction proceedings—where "the parties agree[] on claim construction."  *Tolmar Therapeutics*, 2022 WL 13858026, at *5.  That, however, is not the case here—as the parties' briefs indicate, they dispute the meaning of the terms for which ASUS proposes its constructions.  Moreover, the claim construction proceedings have not yet begun: a claim construction hearing is set for June 2024, and the parties' claim construction briefing is not due until May 2024.  Scheduling Order, ECF No. 16.  Be that as it may, as we will see, the Court is able rule on this motion without construing any terms—leaving the task of claim construction for another day.

ASUS arguments are directed to reissue claim 1.  Def.'s Mot. to Dismiss at 3.  That claim reads as follows:

> 1. A computer system comprising: **a computer box *without a processor for performing computing operations***, said computer box comprising: a housing; circuitry enclosed by said housing; a bus internal to said housing connected to said circuitry; and a first communication port for enabling electrical connection of circuitry external to said housing to said internal bus; and **a portable *and handholdable*** motherboard external to the housing comprising: a central processor, a *motherboard* bus connected to said *central* processor, a *motherboard* connector for engagement with said first communication port for enabling electrical connection of said *central* processor through **said [processor] *motherboard* bus** to said internal bus of said computer box; one or more second communication ports for enabling electrical connection of circuitry external to said to motherboard to said motherboard bus; wherein connection of said [portable] motherboard connector to said first communication port enables said computer box to perform

---

[11] *See also, e.g.*, *ALD Soc., LLC v. Verkada, Inc*., 654 F. Supp. 3d 972, 979 (N.D. Cal. 2023) ("Claim construction is generally not proper at the 12(b)(6) stage."); *Repairify, Inc. v. Keystone Auto. Indus., Inc.*, 610 F. Supp. 3d 897, 902–03 (W.D. Tex. 2022) (declining to entertain a Rule 12(b)(6) motion because the motion hinges on claim constructions and the court had not yet held a claim construction hearing).

computing operations; *and wherein said motherboard includes Northbridge and Southbridge circuitry*.

RE'365 at col. 5, ll. 5–24 (italics and brackets in original; boldfaced emphases added).  In the above, the italicized texts were added to, and bracketed texts were deleted from, claim 1 of the '724 patent during the reissue examination, and the boldface emphases have been supplied by the Court to highlight the terms and phrases that form the bases of ASUS's feature argument that reissue claim 1 is broader than original claim 1.  For the sake of completeness, the Court reproduces original claim 1 in the footnote below.[12]

Specifically, ASUS argues that original claim 1 was made broader by (1) adding the limitation "without a processor for performing computing operations" (hereinafter, often, referred to as the negative limitation) to the "computer box" element; (2) changing the limitation "processor bus" to "motherboard bus"; and (3) adding "handholdable" to the "portable motherboard" element.  Def.'s Mot. to Dismiss at 3.  Below, the Court addresses each in turn.

---

[12] Original claim 1 recites:

1. A computer system comprising:
a computer box, said computer box comprising:
  a housing;
  circuitry enclosed by said housing;
  a bus internal to said housing connected to said circuitry; and
  a first communication port for enabling electrical connection of circuitry external to said
    housing to said internal bus; and
a portable motherboard external to the housing comprising:
  a central processor,
  a bus connected to said processor,
  a connector for engagement with said first communication port for enabling electrical
    connection of said processor through said processor bus to said internal bus of said
    computer box;
  one or more second communication ports for enabling electrical connection of circuitry
    external to said motherboard to said motherboard bus;
wherein connection of said portable motherboard connector to said first communication
    port enables said computer box to perform computing operations.

'724 patent at col. 4, l. 59–col. 5, l. 14.

## A.   Negative Limitation

Original claim 1 recites, "a computer box, said computer box comprising: . . . ," '724 patent at col. 4, l. 60, whereas reissue claim 1 recites "a computer box *without a processor for performing computing operations*, said computer box comprising: . . . ," RE'365 at col. 5, ll. 5–6. The added phrase "without a processor for performing computing operations" is a negative limitation.  Such a limitation describes the claimed invention in terms of what it is not, rather than what it is: it excludes from the claim that which is recited in the limitation.  *See Nike, Inc. v. Adidas AG*, 812 F.3d 1326, 1347 (Fed. Cir. 2016) ("Negative limitations generally recite an express exclusion of material."), *overruled on other grounds by Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017); MPEP § 2173.05(i) ("If alternative elements are positively recited in the specification, they may be explicitly excluded in the claims."); *see also Imaginal Systematic, LLC v. Leggett & Platt, Inc*., 805 F.3d 1102, 1109–11 (Fed. Cir. 2015) (treating "without the use of a vision guidance system" as a negative limitation).[13]

ASUS argues that the limitation broadened the original claim.  Def. Mot. to Dismiss at 3. Its argument seems to be that original claim 1 claims only a computer box with a processor, that is, the element "a computer box" means "a computer box with a processor."  Therefore, by switching from a computer box with a processor to a computer box without a processor, ASUS argues, the patentee necessarily broadened original claim 1.  Def.'s Reply at 4; Def. Mot. to Dismiss at 3, 8–9.  MMI counters that original claim 1 is silent as to whether the "computer box" includes a processor and argues that the original claim element "a computer box" encompasses

---

[13] *See also Inventist, Inc. v. Ninebot Inc*., 651 F. Supp. 3d 1228, 1239–40 (W.D. Wash. 2023) (treating "without a vertically ascending control handle" as a negative limitation); *DePuy Orthopaedics, Inc. v. Orthopaedic Hosp*., No. 3:12-CV-299-JVB-MGG, 2017 WL 3769756, at *4 (N.D. Ind. Aug. 31, 2017) (stating "without thermally treating the implant to extinguish free radicals" is a negative limitation).

both a computer box with a processor and a computer box without a processor, and so, adding the negative limitation in reissue claim 1 narrowed the original claim. *See* Pl.'s Resp. at 10.

MMI points out that the specification explains that "a computer box" can be either without a processor, or with a processor. *Id.* The specification describes "a computer system comprising a portable motherboard which when connected with a computer box having internal circuitry . . . forms the computer system." '724 patent col. 1, ll. 48–51. Each embodiment of the motherboard disclosed in the specification includes a microprocessor or a central processing unit (CPU). *E.g.*, *id.* at col. 1, ll. 52–53 ("the motherboard comprises a microprocessor" (discussing the preferred embodiment); *id.* at col. 3, ll. 51–52 ("portable motherboard 300 comprises central processing unit 113" (describing the alternative embodiment shown in Fig. 6.).

Regarding the computer box, the specification states it "mean[s] a housing of any form factor that in the prior art contains a motherboard with central processing unit." '724 patent at col. 2, ll. 49–51. Elsewhere, the specification mentions two alternative embodiments of the computer box:

> The portable motherboard provides a computer box with a *brain*. Alternatively, where a computer with a *brain* is slow, the portable motherboard may be used to boost the *brainpower* of the slow computer. . . . Whether the portable motherboard brings life to a computer box or boosts the *microprocessor power* of *a computer containing an internal microprocessor*, the portable motherboard is a powerful invention that makes microprocessor power more efficient and ubiquitous.

*Id.* at col. 4, ll. 40–51 (emphasis added); *see also id.* at Abstract (stating the same). By "brain," it can be reasonably inferred, the specification refers to a processor or microprocessor, as it equates "brainpower" with "microprocessor power." *See id*. at col. 4, ll. 40–51; *see also id.* at col. 1, ll. 23–25 ("The motherboard contains the 'brains' of the computer device. The motherboard is the physical arrangement that holds the CPU." (discussing computers generally)). The specification thus discloses that the computer box can be a computer box without a processor as well as a

computer box with a processor such as when the computer box is a computer.  *See id.* at col. 1, ll. 63–64 ("In an alternative computer system, the computer box is a laptop computer[.]"); *id.* at col. 4, ll. 34–36 ("Preferably, the computer is a personal computer or laptop.  Alternatively, the computer may be a server.  Yet alternatively, the computer may be a mobile phone.").

These two alternative embodiments of the computer box are also shown in the figures of the '724 patent.  For example, Figure 10 depicts "internal circuitry 140 having a CPU 3000 in order to boost the microprocessing capability of the computer," *id.* at col. 4, ll. 43–47; *id.* at Fig. 10; recall, internal circuitry is a component part of the computer box, *id.* at col. 1, ll. 49–50 ("a computer box having internal circuitry").  On the other hand, Figures 4, 6, and 7 each depicts internal circuitry without a processor or CPU, *id.* at Figs. 4, 6, & 7; *see also id.* at col. 3, ll. 65–67 ("Circuitry 140 in this example comprises memory 132, AGP 134, ATA 144, and PCP 142." (describing the embodiment shown in Fig. 7)); *id.* at col. 3, ll. 64–65 ("circuitry 140 resid[es] inside computer box 20" (same)).

So, in view of the specification, the original claim 1 term "a computer box"—which lacks any reference to whether it is with or without a processor—on its face, encompasses both a computer box with a processor and a computer box without a processor.  *See Rambus Inc. v. Infineon Techs. Ag*, 318 F.3d 1081, 1094–95 (Fed. Cir. 2003) (holding the term "bus" is not limited to a "multiplexed bus" where the claims generally recite a "bus" and "do not specify that the bus multiplexes address, data, and control information"); *cf. also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel."). And therefore, adding the negative limitation to the "a computer box" element in reissue claim 1 narrowed the scope of the original claim.  *See Santarus, Inc. v. Par Pharm., Inc.*, 694 F.3d 1344,

- 10 -

1351 (Fed. Cir. 2012) (stating that the negative claim limitation "specifying that sucralfate is not administered in conjunction with the Phillips formulation restricted the claims to this preferred use of the Phillips formulations" and "[t]his exclusion narrowed the claims").

ASUS however points to elsewhere in the original claims to argue that original claim 1 claims only a computer box with a processor, *i.e.*, the claim is limited to a computer box with a processor, and therefore, that adding the negative limitation in reissue claim 1 necessarily broadened the scope of the original claim. *Cf. Hester Indus., Inc. v. Stein, Inc.*, 142 F.3d 1472, 1480 (Fed. Cir. 1998) ("A reissue claim that does not include a limitation present in the original patent claims is broader in that respect."). It advances two such arguments—none is persuasive.

First, it points to original claims 8, 9, and 10, each of which depends from original claim 1. Def.'s Mot. to Dismiss at 3. These dependent claims recite a computer box that is "a laptop," "a personal computer," "a server," or "a mobile phone." '724 patent at col. 5, ll. 30–36. ASUS argues that all such products sold in America come with a processor and by adding the negative limitation, MMI broadened the original claim's scope to cover "dumb product" that do not come with their own processors. Def.'s Mot. to Dismiss at 3, 8. Implicit in this argument is the premise that the term "computer box" as recited in independent claim 1 of the '724 patent encompasses only a computer box with a processor, but not both a computer box with a processor and a computer box without a processor. ASUS thus attempts to import a claim limitation (here, allegedly, a processor) from a dependent claim into its independent claim.

Even assuming, as ASUS argues, that the laptop, personal computer, server, and mobile phone as recited in the dependent claims each requires a processor, the doctrine of claim differentiation strongly undercuts ASUS's argument. According to the doctrine, "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in

question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898, 910 (Fed. Cir. 2004).  And the doctrine "is at its strongest . . . where," as here, "the limitation that is sought to be read into an independent claim already appears in a dependent claim." *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 690 F.3d 1318, 1324 (Fed. Cir. 2012) (internal quotes omitted)).  The application of the doctrine presumptively suggests that "a computer box" as recited in original claim 1 encompasses *both* a computer box with a processor and a computer box without a processor.  *See Hill-Rom Servs., Inc. v. Stryker Corp*., 755 F.3d 1367, 1371, 1374 (Fed. Cir. 2014) (holding that "datalink" as recited in an independent claim encompasses both wired and wireless connections, where a dependent claim that depended from the independent claim recited "the datalink comprises a wired datalink").  ASUS points to nothing in the specification or the prosecution history that rebuts this presumption.  *See Howmedica Osteonics Corp. v. Zimmer, Inc*., 822 F.3d 1312, 1323 (Fed. Cir. 2016) ("[C]laim differentiation is a rebuttable presumption that may be overcome by a contrary construction dictated by the written description or prosecution history.").

Second, ASUS points to the "wherein" clause of original claim 1 to argue that the claim was limited to a computer box with a processor.  Def. Reply at 4.  ASUS raises this argument for the first time in its reply brief, so, MMI did not have an opportunity to respond to it.  That clause reads: "wherein connection of said portable motherboard connector to said first communication port *enables said computer box to perform computing operations*."  '724 patent at col. 5, ll. 12–14 (emphasis added).  According to the italicized phrase, ASUS argues, the computer box performs the computing operations.  Def.'s Reply at 4.  That, ASUS adds, necessarily means that a processor must be present in the computer box, and that is, in turn, because only a processor can perform computing operations.  *Id.*

- 12 -

Again, the Court is not persuaded.  The specification describes "computing operations" as "including keyboard terminal and display functions."  '724 patent at col. 1, ll. 61–62; *id.* at col. 2, l. 5–6.  Original claim 1 recites "a portable motherboard . . . comprising[] a *central processor*" and "a connector for engagement with said first communication port," of the computer box "for enabling electrical connection of *said processor* . . . to said internal bus of said computer box." *Id.* at col. 5, ll. 3–8 (emphasis added).  And to repeat, the wherein clause recites, "wherein connection of said portable motherboard connector to said first communication port enables said computer box to perform computing operations."  *Id.* at col. 5, ll. 12–14.

Therefore, based on the claim language, once the portable motherboard is connected to the computer box, the claimed computer box gains access to the central processor of the motherboard, and in this way, the computer box is provided with a processor—whether or not it has a processor of its own.  *Cf. id.* at col. 3, ll. 12–18 ("In use, when portable motherboard 300 is connected to motherboard socket 200, central processor 113 may . . . be placed into electrical connection . . . with circuitry internal to computer box 20 to *provide processing capability to computer box 20*." (describing the preferred embodiment shown in Fig. 3) (emphasis added)). However, ASUS, who "must meet the clear and convincing standard of persuasion," *Superior Fireplace*, 270 F.3d at 1367, offers no explanation as to why a computer box *without* a processor of its own would not be enabled to perform computing operations with the motherboard's central processor.  In other words, to perform computing operations, why must a computer box have a processor of its own when it has access to the motherboard's central processor?

Finally, the Court observes, and MMI alludes in passing, *see* Pl.'s Resp. at 11 (citing Ex. F, ECF No. 13-6), that during the reissue examination, MMI attempted to overcome an obviousness rejection to a newly added claim that depended from then-pending claim 1—by

arguing that "[i]n Claim 1 of the Reissue Application, the recited computer box *sans a processor* was 'brainless' until the recited portable motherboard enabled the computer box with the portable motherboard processor."  Reply to Office Action Dated June 7, 2029, at 36, RE'598 application (USPTO Aug. 23, 2019); *see also id.* at 35–36 ("[I]n Claim 1 of the Reissue Application, the recited 'computer box' *has no processor* until the recited 'mobile motherboard' gives it one as recited in the limitation 'wherein connection of said portable motherboard connector to said first communication port enables said computer box to perform computing operations'").[14]  At the time, pending claim 1 was identical in language to original claim 1.  *Id.*, Ex. A.  To the extent that this statement by MMI is relevant to the § 251 analysis[15]—a point ASUS does not press on this motion—the statement suggests that the addition of the negative limitation was merely a clarification and therefore, did not broaden the scope of original claim 1. *See Forest Lab'ys*, *supra*, 501 F.3d at 1270.

In sum, the Court finds that ASUS has failed to carry its burden to show that amending "a computer box" to "a computer box without a processor for performing computing operations" during reissue broadened the scope of the original claim.

---

[14] *See Vervain, LLC v. Micron Tech., Inc.*, No. 6:21-CV-00487-ADA, 2022 WL 23469, at *5 (W.D. Tex. Jan. 3, 2022) ("Courts may take judicial notice of government records, like prosecution history available on the U.S. Patent & Trademark Office's Public PAIR site, even when resolving a Rule 12(b)(6) motion."); *accord Ask Sydney, LLC v. Amazon.com Servs., LLC*, No. W-23-CV-00108-XR, 2023 WL 5216815, at *7 (W.D. Tex. Aug. 14, 2023).

[15] *Cf. ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 889–90 (Fed. Cir. 2015) (recognizing that "[u]nder certain circumstances, the prosecution history of reissue . . . proceedings may be relevant to determine the scope of an original claim" and "can certainly be relevant to determine the scope of the reissue claim," but stating "[t]o permit later-generated reissue prosecution history to inform the scope of the very same claim limitation from the original patent would run afoul of the basic inquiry" under § 251).

### B. Motherboard Bus

ASUS argues that by replacing "processor bus" with "motherboard bus," the patentee necessarily broadened the scope of original claim 1.  Def.'s Mot. to Dismiss at 3.  To get there, ASUS construes "processor bus" and "motherboard bus" as having two different meanings.  *Id.* 3, 7–8.  MMI responds that the terms "processor bus" and "motherboard bus" refer to the same thing, and therefore, replacing the former with the latter did not change the scope of the original claim.  Pl.'s Resp. at 9.  MMI also points out that during the reissue examination, it made this amendment for clarification purposes and to avoid an antecedent basis objection.  *Id.* at 4, 10.

Original claim 1 recites two buses: first, "a computer box . . . comprising[] . . . a bus internal to said housing connected to said circuitry" (hereinafter, often, referred to as the first bus), '724 patent at col. 4, ll. 60–63, and second, "a portable motherboard . . . comprising[] . . . a bus connected to said processor" (hereinafter, often, referred to as the second bus), *id.* at col. 5, ll. 1–4.  In the above recitations, the use of the words "comprising" means that the first bus is a constituent part of the computer box element, and the second bus is a constituent part of the portable motherboard element.[16]  Later in the claim, three new bus-related terms appear: "said internal bus," *id.* at col 4, ll. 66–67, col. 5, ll. 7–8, "said processor bus," *id.* at col. 5, l. 7, and "said motherboard bus," *id.* at col. 5, l. 11.  Each of these "said" buses must refer back to the first bus or the second bus.  *See Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim.").  Before addressing ASUS's specific arguments, the Court explores to which of the first bus or the second bus these three terms refer.

---

[16] *Cf.* Donald S. Chisum, 3 *Chisum on Patents* § 8.06[1][b][ii][A] (2024) ("In the lexicon of patent law, 'comprising' means that the recited elements are . . . a part of the device." (internal quotes omitted)).

Turning first to "said internal bus" and "said processor bus," original claim 1 recites a portable motherboard comprising, *inter alia*, "a connector for engagement with said first communication port for enabling electrical connection of said processor through *said processor bus* to said *internal bus of said computer box*." '724 patent at col. 5, ll. 5–8 (emphasis added). This clause makes clear that "said internal bus" refers to the first bus, *i.e.* "a bus internal to said housing" of the computer box.  Moreover, the use of "said internal bus" and "said processor bus" in the same clause gives rise to an inference that they refer to two different buses, *see Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (stating that if two terms described a single element, one would expect the claim to consistently refer to this element with one or the other of the two terms, but not both, "especially within the same clause" and holding the two terms recited in the claim at issue were not synonyms), and so, it is reasonable to infer that "said processor bus" refers to the second bus, *i.e.*, a bus connected to said processor.[17]

That leaves us with "said motherboard bus," which is recited in the clause immediately after the above-mentioned clause reciting "said processor bus."  Specifically, that clause recites: "one or more second communication ports for enabling electrical connection of circuitry external to said motherboard to *said motherboard bus*." '724 patent at col. 5, ll. 9–11 (emphasis added). On its face, "motherboard bus" suggests that it is a part of the motherboard element of the claimed computer system, not of the computer box element; ASUS concedes as much, as it argues that a motherboard bus is "any bus on the motherboard."  Def.'s Mot. to Dismiss at 8. Consequently, "said motherboard bus" most reasonably refers to the second bus, *i.e.*, "a bus

---

[17] ASUS appears to concede that, as it says that to overcome the antecedent basis objection, the patentee could have "easily changed" "motherboard bus" to "processor bus."  Def.'s Reply at 3.

connected to said processor," which, as discussed, is a part of the portable motherboard element. Therefore, "said processor bus" and "said motherboard bus" each refers to the same bus: "a bus connected to said processor" (the second bus).

Turning to ASUS's specific arguments, in support of its contention that replacing "processor bus" with "motherboard bus" broadened original claim 1, ASUS says that "[a] processor bus connects the processor to something else," whereas "a motherboard bus has a broader meaning than a processor bus" in that it can include "that bus," *i.e.*, the bus that connects the processor to something else, as well as "any other bus on the motherboard."[18]  Def.'s Mot. to Dismiss at 8.  To explain how its definitions of "a processor bus" and "a motherboard bus" apply to the patent, ASUS points to Figures 6 and 7 of the '724 patent.  *Id.*  Figure 6[19] is reproduced below with annotations supplied by the Court:



'724 patent at Fig. 6 (annotations added).  ASUS argues, without support, that the unlabeled line

---

[18] Elsewhere in its motion, ASUS provides broader definitions of "a processor bus" and "a motherboard bus": "[a] processor bus can mean either a bus inside a processor or a bus that connects the processor to something else, for example, memory," whereas "[a] motherboard bus can be either any one of the any buses on a motherboard or a bus that connects the motherboard to something else."  Def.'s Mot. to Dismiss at 3.

[19] For brevity, the Court addresses Figure 6 only, though the same analysis applies to Figure 7.

(labeled by the Court as Ct.194 in the above reproduction) that "connects the Central Processing Unit 113 to the North Bridge 130" is the processor bus, whereas the motherboard bus would include data bus 192 that "connects the North Bridge 130 to the South Bridge 140a." *Id.* Thus, according to ASUS's definitions, whereas the line Ct.194 is the processor bus, the data bus 192 (perhaps, more precisely, the portion of the depicted bus that is labeled by the Court as Ct.195 in the above reproduction because, as ASUS says, a motherboard bus is any bus "on" the motherboard 300, Def.'s Mot. to Dismiss at 8) is *not* the processor bus, though the line Ct.194 and the data bus 192 each is a motherboard bus.

For several reasons, ASUS's arguments are unpersuasive. First, while ASUS's definitions of "a processor bus" and "a motherboard bus" may be correct as those terms are understood in the relevant field of technology, neither the term "processor bus," nor the term "motherboard bus" appears anywhere in the specification, and ASUS, who has the burden on invalidity under § 251, fails to cite any extrinsic evidence in support of the meanings it gives to those terms. *Cf. Va. Innovation Scis., Inc. v. Samsung Elecs. Co.*, 614 F. App'x 503, 511 (Fed. Cir. 2015) (stating, to construe "display format," "extrinsic evidence in this instance must be consulted concerning 'the meaning of technical terms, and the state of the art'" (quoting *Phillips*, 415 F.3d at 1314)). Without evidentiary support, ASUS's definitions of "a processor bus" and "a motherboard bus" amount to off-the-cuff attorney arguments that the Court may not consider for claim construction purposes. *Id.* ("[A]ttorney arguments are not relevant intrinsic or extrinsic evidence.").[20]

_____

[20] *See also, e.g.*, *VR Optics, LLC v. Peloton Interactive, Inc.*, 345 F. Supp. 3d 394, 409 (S.D.N.Y. 2018) ("[F]or purposes of claim construction, 'attorney argument is not evidence.'" (brackets omitted) (quoting *Elcommerce.com, Inc. v. SAP AG*, 745 F.3d 490, 506 (Fed. Cir.), *vacated on other grounds*, 564 F. App'x 599 (Fed. Cir. 2014))); *Capstan AG Sys., Inc. v. Raven Indus., Inc.*, No. 16-4132-DDC-KGS, 2018 WL 953112, at *5 (D. Kan. Feb. 20, 2018) (The "plaintiff's argument asks the court to reach its proposed construction based solely on an attorney's argument—something the court cannot do.").

Second, although ASUS relies on its definitions of "a processor bus" and "a motherboard bus," original claim 1 recites, to repeat, "said processor bus" and "said motherboard bus"—not "a processor bus" or "a motherboard bus." '724 patent at col. 5, ll. 7, 11.  Recall, "said processor bus" and "said motherboard bus" each refers back to "a bus connected to said processor" (the second bus).  Yet, ASUS does not explain why "said processor bus" and "said motherboard bus" each should not mean the same as does their antecedent basis—irrespective of what "a processor bus" and "a motherboard bus" may mean in the relevant field of technology.  *Cf. Bancorp Servs., L.L.C. v. Hartford Life Ins.*, 359 F.3d 1367, 1370–74 (Fed. Cir. 2004) (stating "it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice," and finding claim terms "stable value protected investment" and "surrender value protected investment credits" were "synonymous" and "meant the same thing").  If they mean the same (whatever that is), there is no broadening of the original claim.

Third, ASUS also fails to explain why one skilled in the art would not understand "said processor bus" to encompass the data bus 192 (or more precisely, bus Ct.195).  In ASUS's view, it appears, the data bus 192 (or Ct.195) is not "said processor bus" because it does not connect the Central Processing Unit 113 to something else, such as the computer box.[21]  But that underlying premise is refuted by the specification's discussion of Figure 6 on which ASUS relies: the specification describes that "[d]ata bus 192 provides *electrical connection* of *both* Central Processing Unit 113 *and* North Bridge 130 to circuitry 140 residing inside computer box 20." '724 patent at col. 3, ll. 52–55 (emphasis added).  Moreover, to the extent that ASUS implies that the data bus 192 (or Ct.195) is not the "said processor bus" because it, unlike line

---

[21] *See* Def.'s Mot. to Dismiss at 8 ("Mobile Motherboard led the public to believe that it was free to make and sell other systems in which *something other than the processor bus connected* the central processor to the computer box.  After seven years, Mobile Motherboard decided to broaden the claims such that *any motherboard bus can connect the central processor to the computer box*.").

Ct.194, is not *directly* connected to the Central Processing Unit 113 (as opposed to being indirectly connected through another component part, such as the North Bridge 130, to the processing unit), ASUS fails to point to anything in the original claim that requires such a direct connection to the processor.  For example, the original claim recites "a bus connected to said processor," without any reference to whether the bus is directly or indirectly connected to the processor, *id.* at col. 5, l. 4, and further recites "for enabling *electrical connection* of said processor through said processor bus," *id.* at col. 5, ll. 6–8 (emphasis added); *see also id.* at col. 5, ll. 9–11 ("enabling *electrical connection* of circuitry external to said motherboard to said motherboard bus" (emphasis added)).

In sum, the Court finds ASUS's arguments unpersuasive and therefore, finds that ASUS has failed to carry its burden to show that replacing "said processor bus" with "said motherboard bus" in reissue claim 1 broadened the scope of the original claim.

## C.  Handholdable Motherboard

During reissue examination, the patentee amended "a portable motherboard" as "a portable *and handholdable* motherboard."  *Compare* '724 patent at col. 5, l. 1, *with* RE'365 at col. 5, l. 11.  For purposes of this motion, ASUS does not contest whether "handholdable" has adequate support in the specification but argues that the addition of "handholdable" broadened the original claim.  Def.'s Reply at 5–6.

Specifically, ASUS construes "portable" to mean "capable of being used with multiple computers" in that the motherboard is not dedicated to, or permanently integrated into, just one computer, *id.* at 5–6, whereas it construes "handholdable" to mean being safe for handholding, *see* Def.'s Mot. to Dismiss at 9.  ASUS then argues, without any evidentiary support, that MMI added "handholdable" to cover products that were not covered by original claim 1—specifically,

to cover products that look like a thumb drive, such as the accused product in this case, which, unlike the motherboards shown in Figures 5, 8, and 9, does not have any sharp pins, or any exposed electrical circuits, and is designed such that it does not become hot.  *Id.* 4–5; Def.'s Reply at 6–7.  By capturing thumb drive like small products, ASUS argues, "handholdable" expands the scope of the claims.  Def.'s Reply at 7.  MMI responds that there can be no reading of the claim in which a further limitation of "and handholdable" to the pre-existing limitation "portable" broadens the claim.  Pl.'s Resp. at 12.

ASUS's argument that "handholdable" covers products such as the accused product, but that such products are not covered by original claim 1, presumably due to the word "portable" alone, reads like infringement arguments—something the Court may not entertain at this stage. *Cf. Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016) (At the claim construction stage, "courts should not resolve questions that do not go to claim scope, but instead go to infringement[] or improper attorney argument." (cleaned up)).  For § 251 purposes, the question is whether "a portable and handholdable motherboard" (reissue claim 1) is broader than "a portable motherboard" (original claim 1).

Each of the words "portable" and "handholdable" (adjectives) modifies the word "motherboard" (a noun).  Generally, adding a modifier such as an adjective to a general term that is a noun narrows the scope of the general term.  *See InterDigital Commc'ns*, 690 F.3d at 1324, 1325 n.1 (explaining the terms "pilot code," "access code," and "spreading code," which add "different modifiers" to the general term "code," are narrower than the term "code," which, standing alone, carries its full meaning); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249–50 (Fed. Cir. 1998) ("Nor may we, in the broader situation, add a narrowing modifier before an otherwise general term that stands unmodified in a claim.  For example, if an

apparatus claim recites a general structure (e.g., a noun) without limiting that structure to a specific subset of structures (e.g., with an adjective), we will generally construe the claim to cover all known types of that structure that are supported by the patent disclosure." (internal citations omitted)).  Consequently, whereas the modifier "portable" narrows the term "motherboard" in the original claim, the addition of "and handholdable" further narrowed the term in the reissue claim—in that reissue claim 1 requires that the motherboard not only be portable (as does the original claim), but additionally be handholdable.

In conclusion, the Court finds that ASUS has failed to carry its burden to show that reissue claim 1 is broader in scope than original claim 1 and in turn, that reissue claim 1 is invalid under 35 U.S.C. § 251.  The Court **CAUTIONS** that nothing in this Report and Recommendation should be construed as the Court's constructions of any terms discussed above.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that ASUS's Motion To Dismiss Plaintiff's Complaint (ECF No. 11) be **DENIED**.

**So ORDERED and SIGNED this  5th day of February 2024.**

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**